IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-331-FL

| | | |
|---|---|---|
| JOHNETTA BLOUNT LEARY, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-30, DE-34] pursuant to Fed. R. Civ. P. 12(c). Claimant Johnetta Blount Leary ("Claimant"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB").[1] The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the

---

[1] On 3 March 2011, the Clerk of Court received a letter dated 1 March 2011 from Claimant's treating physician wherein the physician advocated for Claimant's disabled status. [DE-30]. On 18 May 2011, the Clerk of Court received a letter dated 14 May 2011 from Claimant, wherein she informed the case manager that she is "not familiar with the procedures that the court system is asking (ordering) me . . . [so] I am filing a motion to have the Commissioner['s] . . . decision reversed." [DE-31]. In its order dated 12 May 2011, the court construed the March 2011 letter as a motion for judgment on the pleadings [DE-29], and in its 22 June 2011 order [DE-33], the court accepted Claimant's May 2011 letter as the required memorandum in support of her motion for judgment on the pleadings.

Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 5 January 2006, alleging disability due to depression beginning 10 February 2008. (R. 12, 111-12). Her claim was denied initially and upon reconsideration. (R. 12). A hearing before the Administrative Law Judge ("ALJ") was held on 1 October 2008, at which Claimant was represented by counsel and a witness appeared and testified. (R. 18-45). On 10 November 2008, the ALJ issued a decision denying Claimant's request for benefits. (R. 9-17). Claimant then requested a review of the ALJ's decision by the Appeals Council, and submitted additional evidence as part of her request (R. 5). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 23 July 2010. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and

2

somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform ... past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration,

3

persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

As Claimant is proceeding before this court *pro se*, the court has reviewed and considered Claimant's filings with the liberal construction to which *pro se* pleadings are entitled. *See Miller v. Barnhart*, 64 Fed. Appx. 858, 859 (4th Cir. 2003) (explaining a *pro se* litigant "is entitled to a liberal construction of her pleadings"). In her May 2011 memorandum, Claimant does not clearly assign errors to the Commissioner's final decision; however, her letter suggests that she seeks a remand pursuant to sentence six of 42 U.S.C. § 405(g). In its briefing, the Commissioner has interpreted both Claimant's motion and memorandum in support thereof as arguing that (1) the ALJ's severity finding was not supported by substantial evidence, (2) the ALJ improperly evaluated the opinions of Plaintiff's treating physicians; and (3) new evidence submitted to the court requires a sentence six remand. The court finds the Commissioner's statement of the issues is an accurate interpretation of Claimant's motion and supporting memorandum. The court notes further that additional evidence was considered by the Appeals Council that was not presented to the ALJ. Accordingly, upon reviewing the record and giving it due consideration in its entirety, the court considers the following issues: (1) whether the evidence submitted to the Appeals Council qualifies as material and relevant evidence; (2) whether the ALJ's step two finding is supported by substantial evidence;[2] and (3) whether there is new and material evidence that should be incorporated into the record and considered by the ALJ on remand pursuant to sentence six of 42 U.S.C. § 405(g).

---

[2] The court considers the ALJ's treatment of the opinions of Claimant's treating physicians within its severity discussion.

4

# FACTUAL HISTORY

## I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14). At step two, however, the ALJ determined Claimant's impairments – hypertension, mild degenerative joint disease, depression and migraine headaches – did not significantly limit Claimant's ability to perform basic work-related activities for twelve consecutive months. *Id.* Accordingly, the ALJ concluded that as of 30 June 2001, Claimant's date last insured ("DLI"), Claimant did not have a severe impairment or combination of impairments. *Id.* In evaluating Claimant's depression, the ALJ found it resulted in no limitations in Claimant's activities of daily living, social functioning and concentration, persistence and pace and no episodes of decompensation. (R. 17).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 57 years old. (R. 94). Claimant is a high school graduate with one year of college. (R. 22). Claimant has past work as a medical office assistant, nurses assistant and bookkeeper. (R. 23-26).

Claimant testified that she stopped working in 1998 due to migraine headaches, depression and stress. (R. 27, 32). Claimant testified that in 1998, she experienced migraines at least twice a week but presently experiences them at least once a week. (R. 27, 29). Claimant takes no medications for her migraines because medication is ineffective. (R. 27). Claimant testified to being treated by a "spiritualist" in 1998 as well as "one psychiatrist or specialist after another" but did not continue treatment with anyone during that time because she found the treatment ineffective

5

and because the physicians "did not get along with [her]." (R. 35). However, Claimant testified that at present, she is under a doctor's care for mental health treatment, which she has received since 2006. (R. 34).

Claimant testified that since 1998, she has experienced crying spells at least three times a week, she experiences panic attacks often and had a heart attack in 2004. (R. 32-33). Claimant testified that her panic attacks are less frequent due to medication she is taking. (R. 33). Claimant testified further to experiencing nightmares every day in 1998, which were accompanied by a spirit touching her. (R. 30). Claimant presently experiences nightmares "[j]ust about every other night." (R. 30). Claimant testified that her medication does not stop her nightmares but it does "prevent [her] from seeing the other world." (R. 31). Claimant's hallucinations, which she has experienced all of her life, worsened with age and in 1998, she could no longer work due the frequency of the hallucinations. (R. 34). Claimant thinks about suicide "all the time" but testified that she is not suicidal. (R. 34). Claimant experiences side effects from her medication, including weight gain, hair loss, blurred vision, nausea, headaches, concentration and focus difficulties (R. 31, 36). Claimant testified further that she believes she would have difficulty following written or spoken instructions due to her medications. (R. 36). Claimant performs no daily activities, does not participate in social activities and has no friends. (R. 37). Claimant has a driver's license but could not recall how often she drives. (R. 37-38).

### III. Testimony of William Henry Leary

William Henry Leary ("Leary"), Claimant's husband, testified as a witness at the administrative hearing. (R. 38-44). Leary testified that in 1998, when Claimant last worked, she was often moody and "teary-eyed" and was experiencing sleep problems and hallucinations. (R. 39).

Leary explained that while Claimant was involved in several jobs that required public contact, Claimant only had problems getting along with employees and coworkers. (R. 40). Leary explained that Claimant suffers from "bad dreams" and hallucinations in the form of the bed shaking or "things coming towards her." (R. 41). Leary testified that Claimant's memory, concentration and sleep problems have existed continuously since 1998. (R. 41). Leary testified that Claimant is presently seeing a psychiatrist on a regular basis; however, he is not sure how often Claimant sought treatment between 1998 and 2001, Claimant's DLI. (R. 42-43).

## DISCUSSION

### I. Review of additional evidence submitted to the Appeals Council

The Appeals Council incorporated the following additional evidence into the record: (1) progress reports from Mukesh Kamdar, M.D., dated 24 April 2009 and 27 July 2009 (R. 328-29); and (2) a letter dated 7 December 2008 and treatment records (and accompanying laboratory reports) from Cara L. Davis, M.D., dated 1 October 2008, 10 December 2008 and 22 April 2009 (R. 331-52). (R. 5). The Appeals Council discounted the additional evidence noting it post-dated Claimant's DLI and contained information "about a later period [and thus] does not affect the decision about whether [Claimant was] disabled at the time [she was] last insured for disability benefits." (R. 2). While the Appeals Council discounted this additional evidence, the court must nevertheless review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). However, at this stage, Claimant bears the burden of

7

demonstrating that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision; and (3) relates to the claimant's medical condition as it existed at the time of the hearing. 20 C.F.R. § 404.970(b); *see Wilkins*, 953 F.2d at 96 (citations omitted); *see also Eason v. Astrue*, No. 2:07-CV-30-FL, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29, 2008) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). In this case, the relevant time period extends from 10 February 1998 (Claimant's alleged disability onset date) to 10 November 2008 (the date of the ALJ's decision).

Dr. Kamdar's records indicate Claimant experiences delusional thoughts and suffers from schizoaffective disorder. (R. 328-29). Dr. Davis' records also document Claimant's problems with depression accompanied by hallucinations as well as migraine headaches. (R. 331, 347). Dr. Davis' December 2008 opinion provides further details as to the alleged impact of Claimant's mental impairment on her ability to work:

> [Claimant] was significantly depressed prior to June 30, 2001. Her records reflect depression with impairment of daily function in March 2001. The records, in fact, reflect that she was on doxepin in 1998. This drug is an antidepressant. Her symptoms began years before and included stress tolerance and sleep disturbance. Now she has worsened to the point of being disabled from all occupations.
>
> I am very concerned that [Claimant's] medical information be corrected to reflect the long term and progressive nature of her illness. I am happy to try to correct this devastating misunderstanding. [Claimant] is struggling to stabilize her severe medical condition and I would like to expedite her disability claim.

(R. 352). The evidence submitted to the Appeals Council is cumulative of those considered by the ALJ. In particular, the ALJ noted that the records before him indicated Dr. Davis first saw Claimant in 1998 for a routine physical examination, whereupon it was noted that Claimant had a long history

8

of hypertension, headaches and a sleep disorder. (R. 16, 325). In November 2001, Dr. Davis began treating Claimant for depression and was started on Wellburtin and Doxepin. (R. 16, 233). The ALJ acknowledged a 27 March 2006 treatment note wherein Dr. Davis listed diagnoses of anxiety, depression and insomnia and opined that Claimant was disabled from any occupation. (R. 233). In an October 2008 report, Dr. Davis stated that Claimant had been unable to function well socially or hold gainful employment since she began treating Claimant in 1998. (R.16, 325). The ALJ acknowledged also that Claimant began treatment in November 2006 with Dr. Kamdar for schizoaffective disorder. (R. 16, 274). Accordingly, because this evidence documents similar diagnoses, findings and medical opinions as those considered by the ALJ, this later-submitted evidence would not have changed the outcome of Claimant's determination by the ALJ, and therefore, the evidence is immaterial.

**II.     The ALJ's severity determination is supported by substantial evidence.**

The court considers next whether the ALJ's step two determination – that Claimant did not have an impairment that significantly limited he ability to perform basic work-related activities – was supported by substantial evidence.

At step two of the sequential evaluation process, the claimant bears the burden of demonstrating a severe, medically determinable impairment that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509; *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n.5 (1987). The Act and regulations describe "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508. The regulations further require that physical or mental

impairments must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508. An impairment is "severe" unless it "has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). As such, the "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007); *see also McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (describing the burden of proving the severity of an impairment as "mild" and stating "only claims based on the most trivial impairments" are rejected).

Here, the ALJ relied on treatment records from Dr. Davis, dated 23 October 2000 through and 6 June 2001, in concluding Claimant did not have a severe impairment. As summarized by the ALJ, these records indicate Claimant was treated for an abscess (R. 167-68) and irritant rhinitis (R. 166) and received a tetanus shot (R. 16, 166-68). These records provide no insight into any mental impairment let alone how Claimant's work-related abilities are impacted by any such impairment.

The ALJ discussed also records from Drs. Davis and Kamdar, which post-dated Claimant's DLI. (R. 16). As noted above, this evidence includes a 7 November 2001 treatment record which indicates Claimant was diagnosed with depression and started on medication to which Claimant responded positively and a 28 November 2006 treatment record indicating a diagnosis of schizoaffective disorder. (R. 164-65, 233, 274). The evidence includes also a treatment record dated 27 March 2006 wherein Dr. Davis opined that Claimant was incapable of work (R. 233), a 2 May 2006 letter wherein Dr. Davis stated that Claimant is incapable of working due to "her frequently recurrent depression, anxiety and insomnia" (R. 256), a 1 November 2006 letter wherein Dr. Davis stated that Claimant has been totally disabled since 30 June 2001 (R. 254) and an undated "chart

summary" wherein Dr. Davis indicates treatment of Claimant on eighteen occasions, from 19 October 1998 to 3 January 2008. (R. 325). The chart summary indicates Claimant was diagnosed with depression in November 2001. *Id.* On 13 April 2007, Dr. Kamdar completed a questionnaire regarding Claimant's schizoaffective disorder and opined that Claimant was incapable of even low stress work. (R.280). Dr. Kamdar noted further that the limitations set forth in the questionnaire have existed since "approx. 1998." (R. 281). After acknowledging the post-DLI records by Drs. Davis and Kamdar, however, the ALJ dismissed them on the basis that they post-dated Claimant's DLI.[3] *See* (R. 16) ("Other records in the file were after the expiration of the claimant's insured status and were not considered in deciding the issue of disability."). The ALJ concluded that "the totality of the evidence of record" was not sufficient to establish that Claimant had a severe impairment prior to Claimant's DLI. (R.16).

While statements concerning an individual's inability to work are reserved to the Commissioner, such statements by a treating physician must nevertheless be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. § 404.1527(e)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2 (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner"). Moreover, medical evidence generated subsequent to a claimant's DLI may be relevant to a disability determination where the evidence relates back to the claimant's limitations

---

[3] The ALJ did not summarize Dr. Kamdar's responses to the Psychiatric/Psychological Impairment Questionnaire; however, the ALJ acknowledged that Claimant began treatment with Dr. Kamdar in November 2006 and the decision cites record exhibit 12F, of which Dr. Kamdar's questionnaire is a part. (R. 16, 274).

11

prior to the DLI. *See Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (medical evaluations made two years subsequent to expiration of insured status are not automatically barred from consideration and may be relevant to prove a previous disability); *see also Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984). Upon reviewing the evidence, however, the court finds the ALJ's conclusion that the post-DLI evidence is insufficient to establish that Claimant had a severe impairment is supported by substantial evidence.

Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(d)(2). With respect to Dr. Kamdar's questionnaire, the court notes Dr. Kamdar did not cite to progress reports therein confirming the severity of Claimant's symptoms and the court has located none. Furthermore, there is no information in the questionnaire indicating the symptoms or limitations discussed therein existed during the relevant time period. Such evaluation forms or questionnaires, standing alone, unaccompanied by thorough written reports, are not substantial evidence and thus are entitled to little weight. *See Nazelrod v. Astrue*, 2010 U.S. Dist. LEXIS 77379, at *16, 2010 WL 3038093, at *6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added).

While Dr. Davis also opined that Claimant is incapable of work in a March 2006 progress report and in two letters dated 2 May 2006 and 1 November 2006, these opinions are not supported by the evidence pre-dating Claimant's DLI. (R. 233, 254, 256). As noted by the ALJ, Dr. Davis' progress notes between October 2000 and June 2001 provide no information as to Claimant's mental status. (R. 16). As the ALJ acknowledged, evidence exists indicating a deterioration in Claimant's condition subsequent to the first mention of depression in a November 2001 progress report. (R. 16).

However, there is no objective evidence to corroborate Dr. Davis' opinions and to establish the existence of a severe impairment prior to Claimant's DLI. *See Craig*, 76 F.3d at 590 (stating a medical opinion should be accorded significantly less weight if it is not supported by clinical evidence); 20 C.F.R. § 404.1527(d)(3)) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Here, Claimant has failed to carry her burden in showing an inability to perform substantial gainful activity as a result of any mental or physical impairment. *See* 20 C.F.R. § 1512(a) ("[The claimant] must furnish medical and other evidence that we can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis."). Neither the medical records dated prior to Claimant's DLI nor those dated subsequent thereto contain any findings upon physical or mental examination which suggest that Claimant was incapable of performing work-related activities prior to the expiration of Claimant's insured status. Accordingly, the ALJ's step two finding is supported by substantial evidence.

### III. This case should not be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence.

Finally, the court considers whether to remand this case under sentence six in order for the ALJ to consider evidence not previously presented to the ALJ or the Appeals Council.

When a claimant submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). Under sentence six, "[t]he court . . . may at any time order

13

Case 5:10-cv-00331-FL   Document 36   Filed 11/10/11   Page 13 of 15

additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

In this case, Claimant seeks to introduce two documents as new and material evidence. The first document, attached to Claimant's complaint, is a letter dated 8 March 1999 from Jerry L. Kornegay, Dean of Students at Wake Technical Community College. The letter, a response to Claimant's request for an explanation as to why she failed the clinical portion of her coursework, explains that Claimant's work was "highly inconsistent" and her written work was "consistently unacceptable." [DE-6.8]. Claimant presumably wishes to establish that her poor school performance was the result of a severe medical condition. While opinions from educational personnel regarding the severity of a Claimant's impairments must be considered, *see* 20 C.F.R. § 1513(d), in this case, the letter provides no insight into Claimant's mental impairment. Accordingly, the ALJ's decision would not have been different had this letter been before him.

Second, Claimant seeks to introduce a 1 March 2011 letter from Dr. Kamdar, which states as follows:

> [Claimant] has been under my care for psychiatric treatment since 11/28/06. She has been diagnosed with Schizoaffective Disorder. She continues to have psychotic symptoms including auditory and visual hallucinations and paranoid delusions. Her

> condition is chronic in nature and she has achieved maximum improvement. As a result of her psychiatric condition, it is my professional opinion that she is not capable of any gainful employment, either part time or full time.

[DE-30]. This evidence is not "new evidence" under sentence six because it only relates to Claimant's condition after her DLI. The court observes further that this letter is cumulative of other opinion evidence in the record, and in particular, Dr. Davis' opinion that Claimant is incapable of working.

For the reasons provided above, the additional evidence does not meet the regulatory requirements for new evidence; and therefore, remand pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-30] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-34] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 10th day of November, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge